Rebuttal is for rebuttal only, and we don't expect you to bring up any arguments in rebuttal that have not been addressed either by you or your opponent or adversary. And with that, we call the first case of the day in the United States of America v. Dong Dang Huynh v. U.S. Tours and Remittance. And we'll hear from Mr. Gentry, representing U.S. Tours and Remittance. Thank you, Your Honor, and may it please the Court. We are here today on a case, a criminal forfeiture case, pursuant to 21 U.S.C. 853. Importantly, this is a criminal in personam forfeiture case brought by the United States following the criminal conviction of Dong Dang Huynh. I represent U.S. Tours and Remittance Incorporated, a California corporation, as well as Noack & Stouch, a Texas law firm, that both have interest in the funds that the government is seeking to forfeit by this procedure. This case was dismissed in the trial court following a 12B6 motion, and the allegation of the United States was that the ancillary petitioners, being U.S. Tours and Remittance and Noack & Stouch, failed to set forth a claim on which relief could be granted. The basis for that argument was that the funds in question, which were two checks made payable to U.S. Tours and to Noack & Stouch, were criminally forfeitable based on the conviction of Mr. Huynh. That's simply not the case. Under 21 U.S.C. 853, the opening paragraph says, that any person convicted shall forfeit certain assets. In this case, it is undisputed that U.S. Tours and Noack & Stouch are not a person convicted. Therefore, they cannot be ordered to forfeit assets under Section 853. Likewise and relatedly, Federal Criminal Procedure 32.2C2 requires that the trial court make a finding before entering a final order of forfeiture, that the defendant, the convicted defendant, in this case Dong Huynh, has an interest in the property. The trial court erroneously held that whether Dong Huynh ever owned the property is simply not a relevant question. And with all due respect to the trial court, that is simply not true and that is erroneous. But he does have an interest in it, doesn't he? No, respectfully, Your Honor, no, he does not. Well, but U.S. Tours is owned solely by his wife, right? Yes, Your Honor, it is owned solely by his wife, but as the law provides, a corporation is legally separate and distinct from the owners of that corporation. Well… Sometimes, most of the time. Most of the time. I believe the United States Supreme Court called it a fundamental aspect of United States corporate law. That's one of those times. This is one of those times, Your Honor. One of those times where the corporate veil doesn't mean anything. Your Honor… You can't get the money. With all due respect, Your Honor, they have not pled that, first and foremost. Second, under Texas rules of veil piercing, they would be very unlikely to succeed, partly because U.S. Tour was not owned solely by Dong Huynh. It was owned by two individuals, Dong Huynh and another individual. And more importantly, U.S. Tour has debts that they would have to pay. So even if there was some sort of shareholder ownership of the corporate assets, which has been roundly rejected by every court to consider that, before the shareholders can take the assets out of the company, the company would be obligated to satisfy its preexisting debts. Dong Huynh is the wife? No, Your Honor. Dong Huynh is the husband, the male. He is the one that was tried and convicted. Right, that's what I thought. Okay, you mentioned him as having an interest, I thought. No, Your Honor. That is our position. But he and his wife would have a community interest in her interest in the company, wouldn't they? They would have a community interest in her ownership of shares of stock or membership units, but not in the assets that belong to that company. They own the shares of stock in the company, but they do not own title to the actual assets. Your argument is simply that they used the wrong procedural device, that they should have gone through the other forfeiture, civil forfeiture, as do these parties, right? Yes, Your Honor. I mean, that is something that could have been done. That does seem to be the basis of their argument. They argue repeatedly throughout their briefing that the money was, quote-unquote, involved in Dong Huynh's criminal activity. And if that's the theory, that the money itself is guilty of a crime, that requires a civil in rem forfeiture where you proceed against the money, and, you know, I think Section 881, there's a whole statutory framework there. But in this case, for whatever reason, the United States chose not to do that. They chose to proceed against the defendant as a criminal forfeiture. Why did they do that? If you know, I mean, was there some legal bar or questionable aspect of going through the civil instead of the criminal? Your Honor, again, I don't know exactly why, but my speculation, my belief is, is that civil forfeiture is now barred by the statute of limitations, which is a five-year statute. That, I would say, explains it. And I think that's why. The fact that they didn't timely pursue civil forfeiture, now they're trying to shoehorn what is essentially a civil forfeiture argument into a criminal forfeiture case. And the law simply does not allow that to happen. The United States Supreme Court in United States v. Bajikasian, I believe is how you'd pronounce it, clearly delineated the difference between civil in rem forfeitures, where you proceed against the property because the property allegedly is involved in a crime, and criminal in personam forfeitures, where you proceed against a convicted defendant as a penalty. As the court said in Bajikasian, criminal forfeiture is designed to punish. And you cannot punish someone who has not been convicted. And that's codified in 853, which starts by saying any person convicted shall forfeit. In this case, the government's trying to forfeit assets that do not belong to a person convicted. In fact, the United States indicted U.S. Tuer, and then subsequently on their own motion, requested that U.S. Tuer, that that indictment against U.S. Tuer be dismissed. So they had the opportunity to try U.S. Tuer, convict them, and then forfeit the assets through criminal forfeiture. But they didn't do that either. And like I said, now at the 11th hour they are trying to shoehorn what is a civil forfeiture proceeding into a criminal because they didn't file the civil forfeiture proceeding timely, and they didn't try the criminal case against U.S. Tuer. And they had every opportunity to. The facts, I believe the facts are essentially undisputed. The facts that this is property belonging to U.S. Tuer and then derivatively to the law firm, number one, the seized, the physical seized assets were two checks from the Harris County District Attorney's Office made jointly payable to U.S. Tuer and to Nowak and Stouch. Second, it's undisputed that those checks represented funds seized by the state of Texas from U.S. Tuer's bank accounts. And lastly, if there was any question, the 127th District Court of Harris County has judicially declared under Texas state law that this property belongs to U.S. Tuer and to Nowak and Stouch. Therefore, it does not belong to Dong Nguyen and simply cannot be forfeited criminally as an ancillary proceeding to Dong Nguyen's criminal conviction. Several courts that have addressed this have recognized that criminal forfeiture can only reach the assets belonging to the convicted defendant. The 6th Circuit in U.S. v. O'Dell and U.S. v. Harris. The 11th Circuit in U.S. v. Kennedy. The 9th Circuit in U.S. v. Lester. The 7th Circuit in U.S. v. Ben-Hur. Each of these cases held, quoting from O'Dell, we also recognize that Section 853 only entitles the government to forfeiture of the convicted defendant's interest and nothing more. In this case, the convicted defendant has no interest in these seized checks. So the government is entitled to simply nothing under the criminal forfeiture statute. The government argues in their brief that all of this is cured by the Relation Back Doctrine provided in Section 853. Generally what the Relation Back Doctrine does is gives the government title to the assets that are otherwise forfeitable and makes that title effective as of the date of the criminal activity. In this case, however, the only thing that is forfeitable is the interest of Dong-Win. And since Dong-Win has no interest in these funds, the Relation Back Doctrine can't go back in time and give the government title to something. I understand, but what if we are persuaded by the government's argument that he does have an interest that can be reached? Then where does that put the Relation Back Doctrine from your point of view? Your Honor, if Dong-Win owned these funds— I'm assuming that—let's assume he does because we could decide that. Now, how does that affect your Relation Back Theory? What would you say then? Under the Relation Back Doctrine, they would take whatever title Dong-Win had at the time of the—he's been convicted. So at the time of the crimes— Would they really? I mean, then don't you fall back on the amended judgment of the district court, the amended order of forfeiture, because it was improperly amended? Yes, Your Honor. And consequently, it doesn't matter about— Yes, Your Honor. Turning to that issue, there's only two ways that a trial court can amend a final judgment of conviction. Under Rule 35, which is plainly inapplicable here, within 14 days of sentencing or for substantial cooperation. I don't believe anyone's alleging that that happened. And under 32.2, which allows the amendment to add property to the order of forfeiture that, quote, is subsequently located and identified. In this case, the government concedes on page 51 of their brief that these assets were not located and identified after the order of forfeiture was entered. They were known about. They were located well before that order of forfeiture. And the fact that they continually talk about them and that allegedly the evidence at the trial proved that these assets were used in the operation of Dong Wen's business shows that they knew about them well before the amended order of forfeiture. So by the plain text of the rule, Rule 32.2, you cannot amend the order of forfeiture to add property that was not located and identified after it was entered. The government, again, they failed— In relation back theory, still, it's not applicable. Yes, Your Honor. But the order is invalid. Their argument on that is— It has to be an order of forfeiture, right? It has to be an order of forfeiture. Yes, Your Honor. In order for the relation back principle to relate. Is that correct? Yes, Your Honor. And the amended order of forfeiture that allegedly added these funds to it is simply void on its face. And the government takes the position that we, as the owners of this property, can't challenge this order that is void on its face. And that's simply not true. Under this circuit's precedence, N. Ray Camp, a void order is subject to collateral attack and is void ab initio. You know, what would the argument be if this fellow were a drug dealer and he had the—he's an agent of the bigwig drug dealer and the money is in his hands pending the agent, the bigwig, getting it, getting the money as payment for a large shipment of drugs. Couldn't the government confiscate the money in his hands because he's the possessor of it? In the case of currency that was physically in his hands, yes, because there would not be a legal title to that currency. But at least—well, and that's the whole point here. There's not legal title to money that's being laundered into U.S. tours. But Don Nguyen is the agent who directed that money into U.S. tours. Yes, Your Honor, but in your drug kingpin example, I have no doubt that the United States would go after both the agent and the actual drug kingpin. And if they convicted both of them, then they would have no barrier to the forfeiture because they could— I mean, what Judge Jones has said seems to me to lead to the conclusion that you've got a bunch of money out there that doesn't belong to anybody. Nobody has a claim to it. Well, the government does because it's forfeitable as of the time of the crime. Well, yes, but, I mean, only—but they didn't file the proper order to forfeit it. If we accept all these arguments, the government never forfeited the money. But it doesn't belong to your client because it's the illegal money to begin with that he never owned. So where does all this money go? We got— Well, with all due respect, Your Honor, just so the record's clear— How does he claim it? Dog Nguyen is not my client. My client is U.S. tour. I understand, but your client is hardly a bona fide purchaser without notice, which is one of the provisions that's required by, I think it's 853C. Your Honor, there's two different procedures under 853N4A. Yes, he's got the stupidest wife in creation. Pardon me. Sorry. Your Honor, under 853N6A, an ancillary petitioner can show that the title to the property was vested in the petitioner, not the criminal defendant. As an ancillary, an alternative argument, under 853N6B, a petitioner can show that they're a bona fide purchaser for value. We're not moving under 853N6B. You are not claiming any equitable right to that money. That's for sure. Your Honor, we would just say that when the government seeks to forfeit property, then it needs to follow the rules set forth to do it. And when it doesn't, then forfeiture should not be allowed. Okay. Well, I think you made a good argument. Thank you, Your Honors. Ms. Rolison, you're going to stay where you are now. Yes, sir. And is that— Can you hear me all right? Yes. Oh, we can hear you fine. It's getting recorded as well. Okay. Give it the best you've got. Yes. May it please the Court, Christine Rolison for the United States. The District Court properly dismissed the appellant's petitions because neither U.S. Tours nor the law firm stated facts supporting a plausible claim to meet the statutory requirements under Section 853N6A. The petitioners were required to make their claim under Section 853. There were no factual disputes because all the facts in the petition were taken as true. But that is their only avenue of attack. The case law is clear that the petitioners cannot attack the original preliminary order of forfeiture that was found by the Eleventh Circuit in Davenport. The validity of the preliminary order and the court's requisite nexus finding are something the petitioner starts with when he files his claim. But what is the preliminary order of forfeiture based on? On requisite nexus. So we're not talking about whether the defendant had an ownership interest. Under Rule 32.2B1A, the court issues a preliminary order if the government has established the requisite nexus between the property and the offense. And this property, these seized funds, were the very funds that were being used, were being laundered. Well, then you're saying there's no need for, that the forfeiture order here is completely superfluous? Is that what you're saying? No. If I've accepted your argument, you're just saying, maybe I'm missing a step. The court found in the supplement to preliminary order of forfeiture, the amended order, The amended order, okay. That the seized funds were involved in the money laundering and failure to file CTR violations. So it found the requisite nexus there is involved in. This property was involved in the crime. Now, and it forfeited it. Now a petitioner can come in under 853 and only under 853 and claim to have a preexisting interest. The problem with the appellant's argument is they're focusing on the wrong who and on the wrong when. The petitioner must state what the petitioner's interest is in the money. And the petitioner must state what its interest was at the time of the criminal offense. Not later when the money was seized. Those are the requirements of 853. And 853 has been found. I'm following your argument now, but one thing is left dangling in my mind. Yes, sir. Is how did you get around the fact that the, or how relevant is the fact that it was ordered, the amended order is not supported by the two reasons that would make it a valid amendment? Well, I believe it does fit within 32.2. Congress set up the statutory framework under Section 853. And then as the courts worked with it, they developed Rule 32.2 and set up a procedure by which subsequently located property could be forfeited if it had been covered by the original order. The original order in this case was for $24 million of laundered money. And so when we get here to where there's an amended order of forfeiture, this was not technically subsequently located, but it was otherwise unavailable to the United States because the state had seized that money and the state had an in-rim civil forfeiture proceeding against that money. And because they had jurisdiction, the federal courts could not take jurisdiction under sick care of them. But does that argument address his argument with respect to piercing the corporate veil that you can't pierce the corporate veil? We probably could pierce the corporate veil, but it's more direct in what we have done. In other words, he says you can't get this money because it's not mine. It's not the defendant's. It's not his wife's. It is a corporation's money. Well, he's not able to challenge whether this is the defendant's money. The court found there was a requisite nexus between the property and the crime, and he has to come forward and state what the petitioner's interest is at the time of the criminal offense, and that's what they failed to do. U.S. Tours had no interest in that money at the time that the special customers were handing it over to be laundered, and the defendant put it in his company's bank accounts in order to launder it. Dung Nguyen was an officer or agent or something for U.S. Tours, right? He was the president and two-thirds owner, and the court found that he used the . . . He used that bank account to launder the money through double ledger. Yes. In fact, in the preliminary order, the district court said the evidence shows that the defendant incorporated, owned, operated, and controlled USTR for the purpose of laundering money and moving millions of dollars of money to Vietnam without filing CTRs as required. Those are the court findings. The appellate opinion that affirmed the defendant's conviction stated that the evidence demonstrated Dung was laundering proceeds from drug trafficking through his company, U.S. Tours, and that he had . . . the evidence showed the defendant had USTR create two sets of ledgers to falsely state the deposits were below $3,000 because the agreement was when somebody showed up with $100,000 in cash, Dung and USTR would not report on CTRs that more than $10,000 had been received, and so it didn't have to get any customer identification. It broke all the money down into pieces smaller than $3,000 so that the special customer's names never appeared in the records, and it kept two sets so it had one for the regulators and one that was discovered at the search. So this was the money running through the bank accounts, and the court found it was involved in the actual crime and was subject to forfeiture. And now petitioners can't come and attack that supplement to notice the supplement to the forfeiture order. They can only come in and state, here's my interest at the time of the crime, and that has been held to be constitutional and gives sufficient due process to third parties because if they don't have a qualifying interest under Section 853, then it's not their problem if there was some kind of defect in the supplemental order. So suppose you had Dong Win taking the money on behalf of USTRs and then putting it in a third party's bank account, you know, like his brother. Right. From what you're saying, the brother, could you have the supplemental order of forfeiture covering the money in the completely separate third party account? Yes, you could, and the brother would come in just as if the defendant had put bank robbery money in there. That's clearly not the brother's money. He puts it in there. We say it's subject to forfeiture. The court finds that there's the requisite nexus. Yes, it is. It's seized, and it's in a preliminary order. The brother then has to come in and say what his interest is in the money at the time of the crime, and I assume what he would say is if there was a million dollars of bad money in there, he'd say, well, that first $100,000 before they put it in, that was mine from the sale of my residence, from my salary, from whatever legitimate source, and he would state his interest in that money, and then the order would be amended to exclude his interest. So you get the requisite nexus, and then third parties come in, and if they have a qualified interest under 853, you exclude that from the forfeiture order, and that solves the problem that, Judge Jones, you'd mentioned before, that if somebody has cash and nobody really has title to it and you don't really know who has an interest in it, if that's cash with a requisite nexus to the crime, it's forfeited, and then anybody with a legitimate interest in it comes in through 853 and makes their claim. What about the fact that the statute of limitations, you could have proceeded through civil forfeiture also, could you not? Normally we can, but in this case we could not because the state had a civil in-rim forfeiture, so that money was unavailable to us and we could not institute a civil. So you couldn't get in-rim jurisdiction. Correct, but we can still do it through criminal forfeiture. And the statute of limitations would run anyway. Correct. So the main problems with petitioners' arguments are they have the wrong who, because they're looking at defendants' interests, they need to be looking at their own interests under the wording of the statute, and the wrong when, it's back at the time of the crime, and really the wrong what, it's the seized funds, it's not who holds title to the bank account. Does the court have any further questions? Not at all, and thank you very much. All right, then the government will rest on its dismissal of the petitions. Okay. It will be affirmed. Thank you. Thank you, ma'am. Thank you for your appearance. And Mr. Gentry, you want to tell us why she's not right? Thank you, Your Honor. First, I'd like to note that the government takes the position that the crime was receiving this money. That's simply not true. What Defendant Wynn was convicted of is not filing paperwork with the government, failure to file the CTRs. So the Wynn is not when the money changed hands from the original customers to U.S. Tour. The Wynn is when Dong Wynn failed to file the CTRs. So even under the government's own analysis, there's simply no basis for this argument that you can't show title before the money ever went into your bank account. That's just wrong. Actually, I mean, is it a simultaneous thing that once you receive the money in your hand, you have to file the CTRs after deposits? You have a certain time frame, and I don't know off the top of my head what it is. So, I mean, the crime. Seven days, 30 days. In other words, if you don't intend to file it, then the crime takes place the minute you receive the money and don't file it. Regardless of whether that's true or not, that has never been alleged or proven against U.S. Tour. U.S. Tour was not tried for this. U.S. Tour has not been convicted of anything. U.S. Tour is before this court as an innocent third party. They had the time. Whoa, whoa, whoa. Innocent third party? Innocent under the eyes of the law, Your Honor. They had the opportunity to try them. No, let's put it this way. Not guilty in the eyes of the law. But her argument is that you had to come in and show your innocent possession. In other words, you're setting up a strong man because you're saying that they had to, because she's saying that all that was required for the preliminary forfeiture was the connection between the money and the crime. Respect, I understand that. And that's what made it tainted money and therefore subject to forfeiture. And the possession of the money was in U.S. Tours, but it was still forfeited because it was the fruits of the crime or the evidence of the crime. And you're saying that you're the innocent third party, but it's not the guilt of the third party that's relevant to the original trial. Respectfully, Your Honor, it is the guilt of the third party because in criminal in personam forfeiture, only the assets of the convicted defendant are subject to forfeiture. 853 says that. Any person convicted shall forfeit. 32.2C2 says that independent of all third party petitions, the district court must make an independent finding that the defendant had an interest in the forfeited property. And in this case, the district court cannot make those because they are simply not true. And if they are not true, then the district court cannot forfeit this money as an in personam proceeding. They had the opportunity to address everything that Your Honor said, that this is fruits of the poisonous tree and that this is the proceeds of the crime. If that were so, I mean, they had some claim to U.S. Tours money when they indicted the fellow, right? I mean, the money was forfeited. They filed their criminal forfeiture ancillary to the indictment, did they not? To the indictment of Dong Nguyen, never to the indictment of U.S. Tours. I mean, you could have come in. If that was your argument, why didn't you come in at the very outside of the case making that claim? Your Honor, because 853 sub K prevents intervention in the trial. And that's where the real due process lies. Your claim is that A, it's ancillary, and B, it's that you're the innocent third party. So if it's ancillary, why couldn't you have placed your argument at least before the court at that time? Because Section K, 853K, says that third parties cannot intervene in the trial court, which makes the government's argument that now that the defendants, that these third parties cannot challenge those findings. They're essentially setting up that we could never challenge the findings, no matter how erroneous they are, and due process simply requires more. My clients have never been tried, never been convicted of anything. All the factual findings at a trial of somebody else are simply not bearing, they have no bearing on my clients. My clients have not, they are not guilty as a matter of law. And the government can't take facts from somebody else's trial and... So she was wrong when she told me that if the money had been put in the account of Dong-Win's brother, who was not associated with the crime, that there could not be a preliminary order of forfeiture. Was that wrong? Yes, Your Honor, that is wrong. And what's your best case for that position? Your Honor, I believe the best case for that position is Bajikagian, where the United States Supreme Court draws the distinction between what is an in personam forfeiture and what is an in rem forfeiture. And they want to proceed in personam, they need to have a conviction of the person who owns the assets. Or they need to plead some form of alter ego agency, and they've done none of that. Okay. Thank you very much.